UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   5:25-cv-03478-MWC-DFM                         Date: December 24, 2025

Title:     Arman Kesheshian v. Kristi Noem *et al.*

Present:  The Honorable Michelle Williams Court, United States District Judge

|                    T. Jackson                    |              Not Reported              |
| :----------------------------------------------: | :------------------------------------: |
|                   Deputy Clerk                   |        Court Reporter / Recorder       |

|     Attorneys Present for Plaintiffs:     |     Attorneys Present for Defendants:     |
| :--------------------------------------: | :---------------------------------------: |
|                    N/A                    |                    N/A                    |

**Proceedings:  (IN CHAMBERS) Order GRANTING Petitioners' Application for Temporary Restraining Order (Dkt. 4)**

Before the Court is Petitioner Arman Kesheshian's ("Petitioner") *ex parte* application ("Application") seeking a temporary restraining order ("TRO") enjoining Respondents Kristi Noem, Pamela Bondi, Todd Lyons, Jaime Rios, Fereti Semaia, Immigration and Customs Enforcement ("ICE"), and the Department of Homeland Security ("DHS") (collectively, "Respondents")[1] from removing Petitioner from the Central District of California during the pendency of his Petition for Writ of Habeas Corpus. *See* Dkt. # 4-1 ("*App.*") 6. Petitioner also seeks an order directing his immediate release on an Order of Supervision ("OSUP"), enjoining Respondents from re-detaining Petitioner absent an order of this Court or the provision of an informal interview where Petitioner may contest the revocation of his previous OSUP, and barring Respondents from removing Petitioner to a third country without notice and an opportunity to be heard. *See id.* Respondents opposed the Application. *See* Dkt. # 9 ("*Opp.*").

The Court issued a standing order on December 22, 2025, enjoining Petitioner's removal from the District pending further orders from the Court and setting a briefing schedule on Petitioner's Application. *See* Dkt. # 6.

---

[1] The Application lists Kristi Noem as the Secretary of DHS, Pamela Bondi as the Attorney General of the United States, Todd Lyons as the Acting Director of ICE, Jamie Rios as the Acting Director of ICE's Los Angeles Field Office, and Fereti Semaia as the Warden of the Adelanto ICE Processing Center.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   5:25-cv-03478-MWC-DFM                          Date: December 24, 2025

Title:      Arman Kesheshian v. Kristi Noem *et al.*

For the reasons set forth below, the Court **GRANTS** the Application.

I.      Background

Petitioner was born in the former Soviet Union in 1972 and has resided in the United States since 1988, when he entered the country as a refugee along with his parents and siblings.  *See* Dkt. # 4-3 ("*Keshishian Decl.*") ¶¶ 1, 3.  Petitioner is married to a United States citizen, and they have two adult children together.  *See id.* ¶ 4.  Following his arrival to the United States, Petitioner was granted lawful permanent residence.  *Id.* ¶ 5.  In February 1997, Petitioner was convicted of violating California Penal Code § 182(a) due to his role in a criminal conspiracy and sentenced to six years imprisonment.  *See id.* ¶ 6.  Following his release from state prison, Petitioner was charged with removal under 8 U.S.C. § 1227(a)(2)(A)(iii) based on his criminal conviction.  *See App.* 7.  An Immigration Judge ordered Petitioner's removal on February 15, 2000.  *See id.*  Petitioner's final order of removal designates that Petitioner be removed to Armenia.  *See Opp.*, Ex. D.

Immigration officials attempted to effectuate Petitioner's removal but were unable to obtain the requisite travel documents after Armenia declined to issue them since Petitioner lacked Armenian citizenship.  *See App.* 7.  "Because Petitioner was born in the former Soviet Union, he is considered stateless." *Id.*

In May 2000, immigration officials released Petitioner from detention on an OSUP since officials could not effectuate his removal within the 90-day removal period.  *See Kesheshian Decl.* ¶ 9.  In 2012, immigration officials again detained Petitioner, but released him ten days later after they were unable to effectuate his removal. *See id.* ¶ 10.  Petitioner has regularly reported to ICE while on OSUP.  *See id.*

On November 17, 2025, Petitioner reported to ICE for a regularly scheduled check-in.  *See id.* ¶ 11.  Immigration officials instructed him to enroll in the Intensive Supervision Appearance Program ("ISAP") and report back to ICE on December 4, 2025.  *See id.*  Petitioner followed the officials' instructions and began complying with ISAP requirements.  *Id.*  On December 4, 2025, Petitioner returned to ICE for his next check-in, where Respondents detained him.  *Id.* ¶ 12.  Petitioner represents that immigration officials did not provide notice explaining to Petitioner the reason for his OSUP revocation and detainment.  *Id.*  Beyond officials citing general changes in executive branch policy, Petitioner states that has yet to receive an explanation for the OSUP revocation.  *See id.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  5:25-cv-03478-MWC-DFM                    Date: December 24, 2025

Title:      Arman Kesheshian v. Kristi Noem *et al.*

¶¶ 12–13.  Petitioner also asserts that he has not received an interview allowing him to respond to the reasons that ICE revoked his OSUP status.  *See id.* ¶ 12.

Respondents' version of events differs from Petitioner's.  First, Respondents submit Petitioner's Notice of Revocation of Release, dated December 4, 2025.  *See Opp.*, Ex. A.  That notice states as follows:

> ICE has determined that you can be removed from the United States pursuant to the outstanding order of removal against you.  On February 15, 2000, you were ordered removed to ARMENIA by an Immigration Judge and you are subject to an administrative final order of removal.  On April 13, 2023, you were arrested for a warrant for PC 496D(A): possessing stolen vehicle/vessel, which is a Felony charge.  On October 29, 2018, you were released from the Los Angeles County Jail into the custody of ICE.  This is in clear violation of your order of supervision status.

*Id.*  Exhibit A includes a "Proof of Service" listing that immigration officials served Petitioner with the Notice of Revocation of Release.  *See id.*

Respondents also declare that Petitioner received an informal interview when he was re-detained on December 4, 2025.  *See Opp.*, Ex. B.  Respondents' documentation includes the statement of "J. Gastelum," who notes that:

> On 12/04/2025, I conducted an initial informal interview of the detainee listed above in order to afford the alien an opportunity to respond to the reasons for revocation of his or her order of supervision stated in the notification letter.  At the interview, the alien made the following oral response regarding the reasons for revocation: [BLANK].  The detainee did not provide a written statement.  The detainee did not provide any documents.

*Id.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  5:25-cv-03478-MWC-DFM                          Date: December 24, 2025

Title:      Arman Kesheshian v. Kristi Noem *et al.*

      Respondents include documentation from December 9, 2025, showing a formal request for Armenia to issue travel document on behalf of Petitioner. *See Opp.*, Ex. C. That document also lists Petitioner as "a native and citizen of Armenia." *See id.*

      On December 20, 2025, Petitioner filed a petition for writ of habeas corpus, *see* Dkt. # 1, and the Application, *see App.*

II.    <u>Legal Standard</u>

     A.    *<u>Ex Parte</u> <u>Applications</u>*

      "Circumstances justifying the issuance of an ex parte order are extremely limited." *Reno v. Air Racing Ass'n, Inc. v. McCord*, 452 F.3d 1126, 1131 (quoting *Granny Goose Foods, Inc. v. Teamsters*, 415 U.S. 423, 438–39 (1974)). "Consistent with [the Supreme Court's] overriding concern, courts have recognized very few circumstances justifying the issuance of an ex parte TRO." *Id.* (discussing parties' failure to provide notice under Fed. R. Civ. P. 65(b)).

      In this District, *ex parte* applications are solely for extraordinary relief and are rarely justified. *Mission Power Eng'g Co. v. Cont'l Cas. Co.*, 883 F. Supp. 488, 490 (C.D. Cal. 1995). A party filing an *ex parte* application must support its request for emergency relief with "evidence . . . that the moving party's case will be irreparably prejudiced if the underlying motion is heard according to regularly noticed motion procedures," and a showing "that the moving party is without fault in creating the crisis that requires ex parte relief, or that the crisis occurred as a result of excusable neglect." *Id.* at 492. "Ex parte applications are not intended to save the day for parties who have failed to present requests when they should have." *Id.* at 493 (internal quotation marks omitted).

     B.    <u>Temporary Restraining Orders</u>

      Federal Rule of Civil Procedure ("Rule") 65 grants district courts the power to issue injunctions and restraining orders. Issuance of a TRO, as a form of preliminary injunctive relief, is an extraordinary remedy, and the applicant for such a remedy bears the burden of proving its propriety. *See Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). In general, the showing required for a TRO and a preliminary injunction are the same. *Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co., Inc.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). The

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  5:25-cv-03478-MWC-DFM                    Date: December 24, 2025

Title:     Arman Kesheshian v. Kristi Noem *et al.*

applicant for a TRO must show that: (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm absent the injunction; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 5, 20 (2008); *Meinecke v. City of Seattle*, 99 F.4th 514, 521 (9th Cir. 2024). "In the Ninth Circuit, a plaintiff may also prove a TRO is warranted by raising 'serious questions going to the merits.'" *NML Cap., Ltd. v. Spaceport Sys. Int'l, L.P.*, 788 F. Supp. 2d 1111, 1125 (C.D. Cal. 2011) (quoting *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1132 (9th Cir. 2011)). Where the non-movant is a government entity, "the third and fourth [*Winter*] factors . . . merge." *Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ.*, 82 F.4th 664, 695 (9th Cir. 2023) (en banc).

III.   Discussion

    A.   *Ex Parte* Application and *Mission Power* Factors

The Court finds that Petitioner has satisfied the *Mission Power* factors. Petitioner notes that he has been in custody since December 4, 2025, and avers that he has yet to receive any opportunity to contest his detention or revocation of OSUP status. If the Court heard the Application according to regularly noticed motion procedures, that would leave Petitioner detained without access to any due process for at least an additional 28 days. Though Petitioner could have sought the TRO sooner, the fact that he provided ICE time to give him some additional due process cannot cut against him. However, after weeks in continued detention without the requisite process, the Court finds *ex parte* relief warranted.

    B.   Request for Release from Detention and Restoration of OSUP Status

The Court finds that Petitioner is entitled to a TRO ordering his release from detention on an OSUP. The Court will discuss each of the *Winter* factors in turn.

       i.   *Likelihood of Success on the Merits*

       a.   *Statutory and Regulatory Framework*

"Freedom from imprisonment . . . lies at the heart of the liberty" that the Fifth Amendment's Due Process Clause protects. *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). "[T]he Due Process Clause applies to all 'persons' within the United States," including

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   5:25-cv-03478-MWC-DFM                              Date: December 24, 2025

Title:   Arman Kesheshian v. Kristi Noem *et al.*

noncitizens, "whether their presence here is lawful, unlawful, temporary, or permanent." *Id.* at 693; *see also Trump v. J.G.G.*, 604 U.S. 670, 673 (2025) ("'The Fifth Amendment entitles [noncitizens] to due process of law' in the context of removal proceedings." (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993))).  Thus, a noncitizen under an OSUP has a constitutional liberty interest in their continued release from immigration detention. *See Sun v. Santacruz*, No. EDCV-25-02198-JLS-JCx, 2025 WL 2730235, at *5–6 (C.D. Cal. Aug. 26, 2025) (finding the petitioner had a "substantial" liberty interest in "remaining out of immigration custody" pursuant to an OSUP and granting a TRO enjoining the respondents from re-detaining the petitioner without a pre-detention hearing before a neutral adjudicator); *Yang v. Kaiser*, No. 2:25-CV-02205-DAD-AC (HC), 2025 WL 2791778, at *7–10 (E.D. Cal. Aug. 20, 2025) (same).

8 U.S.C. § 1231(a) governs the detention, release, and removal of noncitizens with an order of removal.  Under § 1231(a), a noncitizen who has been ordered removed must be detained during the 90-day removal period.  8 U.S.C. §§ 1231(a)(1)(A), 1231(a)(2)(A). However, if a noncitizen is not removed within this period, they must be released "subject to supervision under regulations prescribed by the Attorney General." *Id.* § 1231(a)(3). While certain noncitizens may be detained beyond the 90-day removal period, such noncitizens, if released, must also be subject to the same terms of supervision as under § 1231(a)(3). *Id.* § 1231(a)(6).

8 C.F.R. § 241.4 and 8 C.F.R. § 241.13 set the terms of supervised release under 8 U.S.C. § 1231(a)(3) and 8 U.S.C. § 1231(a)(6), including the conditions and procedures under which ICE may revoke release. *See* 8 C.F.R. §§ 241.4(l), 241.13(i).  First, ICE may revoke release when a noncitizen violates a condition of their OSUP. *Id.* §§ 241.4(l)(1), 241.13(i)(1).    Second, ICE may revoke release when, "on account of changed circumstances, [ICE] determines that there is a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future." *Id.* § 241.13(i)(2).  Third, certain officials may exercise their discretion to revoke release. *See id.* § 241.4(l)(2).

Upon revocation of release, ICE must provide the noncitizen a copy of the decision "set[ting] forth the reasons for the continued detention." *Id.* § 241.4(d).  Additionally, the noncitizen must be "notified of the reasons for revocation," *id.* § 241.4(l)(1), and afforded "an initial informal interview promptly . . . to respond to the reasons for revocation stated in the notification," *id.* § 241.13(i)(3).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  5:25-cv-03478-MWC-DFM                          Date: December 24, 2025

Title:      Arman Kesheshian v. Kristi Noem *et al.*

b.  *Analysis*

Petitioner has demonstrated a serious question going to the merits of his requests for a release from detention and restoration of his OSUP status.

First, Petitioner identifies that "the only reason Respondents have provided Petitioner for the revocation of his OSUP was an asserted change in policy under the Trump Administration." *App.* 10 (citing *Keshishian Decl.* ¶ 12). Other courts in this District and outside of it have highlighted that reasoning which does not "identify any specific changed circumstances" is insufficient to put Petitioner on notice as to what led to the revocation of his OSUP. *See Esmail v. Noem*, No. 2:25-cv-08325-WLH-RAO, 2025 WL 3030590, at *5 (C.D. Cal. Sept. 12, 2025); *Perez-Escobar v. Moniz*, 792 F. Supp. 3d 224, 226 (D. Mass. 2025); *see also Delkash v. Noem*, No. 5:25-cv-01675-HDV-AGR, 2025 WL 2683988, at *5 (C.D. Cal. Aug. 28, 2025) (noting that the government may not conflate "reason for removal with the reason for revocation of release").

Respondents contest Petitioner's version of events. They include a Notice of Revocation of Release dated December 4, 2025, and a proof of service of that notice. *See Opp.*, Ex. A. To be sure, the documentation that Respondents provide—identifying that Petitioner was arrested for possessing a stolen vehicle—contains some of the specificity that the regulatory framework contemplates. Still, there remains a serious question going to the merits of Petitioner's claim. First, Petitioner contests that he received this Notice. *See generally App.* Second, the Notice of Revocation's sequence of events is unclear and fails to explain a recent change in Petitioner's recent circumstances. The Notice of Revocation of Release states that Petitioner was arrested in April 2023, but that he was released from Los Angeles County Jail into the custody of ICE in October 2018. *See id.* The Court does not understand the source of Petitioner's custody prior to October 2018, nor does the Notice of Revocation of Release clarify why Respondents failed to detain Petitioner for over 32 months following his April 2023 arrest, or what changed in December 2025. Where a Notice of Revocation of Release is unclear, confusing, or fails to identify with specificity a change in recent circumstances, a Court may deem it inadequate under 8 C.F.R. § 241.13(i)(3). *See, e.g.*, *Saengphet v. Noem*, No. 3:25-cv-2909-JES-BLM, 2025 WL 3240808, at *6–7 (S.D. Cal. Nov. 20, 2025); *J.L.R.P. v. Wofford*, No. 1:25-cv-01464-KES-SKO (HC), 2025 WL 3190589, at *7 (E.D. Cal. Nov. 14, 2025).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  5:25-cv-03478-MWC-DFM                    Date: December 24, 2025

Title:      Arman Keshishian v. Kristi Noem *et al.*

Next, Petitioner contends that there is no significant likelihood of his removal in the reasonably foreseeable future, which requires his release. *See App.* 11; 8 C.F.R. § 241.13(i)(2) (stating that "[t]he Service may revoke an alien's release under this section and return the alien to custody if, on account of changed circumstances, the Service determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future."). Immigration officials have twice attempted to effectuate Petitioner's removal—first in 2000, and later in 2012. *See Keshishian Decl.* ¶¶ 9–10. Respondents' attempt to demonstrate the imminence of Petitioner's deportation lies in Exhibit C—a letter to the Consulate General of Armenia. *See Opp.*, Ex. C. This letter attempts to receive the same documentation that Armenia has twice denied issuing. Moreover, the letter declares that Petitioner is a "native and citizen of Armenia," *see id.*, but Petitioner provides a sworn statement that he was born in the Soviet Union. *Keshishian Decl.* ¶ 1. Respondents do not explain why this attempt to effectuate Petitioner's removal to Armenia will differ from the 2000 and 2012 attempts. That lack of explanation renders Petitioner's revocation of OSUP status unlawful under 8 C.F.R. § 241.13(i)(2). *See Nazarian v. Noem*, No. EDCV 25-02694-KK-ADSx, 2025 WL 3236209, at *5 (C.D. Cal. Nov. 3, 2025); *Rodriguez v. Bondi*, No. C25-2167RSM, 2025 WL 3466925, at *3 (W.D. Wash. Dec. 3, 2025); *see also Tuan Thai v. Ashcroft*, 366 F.3d 790, 798 (9th Cir. 2004).

Petitioner also argues that Respondents never provided him an informal interview at which he could contest his detention. *See Keshishian Decl.* ¶ 12; 8 C.F.R. § 241.13(i)(3). Respondents point to Exhibit B to their Opposition, which describes immigration officials conducting an informal interview. *See Opp.*, Ex. B. Still, Respondents' documentation does not list any oral response that Petitioner made regarding the reasons for the revocation of his OSUP status, nor does it include a written statement or any documentation that Petitioner provided. *See id.* Respondents' briefing also offers no explanation as to what took place in that informal interview. *See generally Opp.*

"It is well-established that government agencies are required to follow their own regulations." *Delkash*, 2025 WL 2683988, at *5 (citing *United States ex rel Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954)). Here, Petitioner's declaration and deficiencies in Respondents' documentation raise a serious question going to the merits of whether Petitioner received the requisite informal interview. If Respondents failed to follow its release revocation procedures, Petitioner's re-detention would be unlawful. *See id.* (collecting cases); *Nazarian*, 2025 WL 3236209, at *5; *Esmail*, 2025 WL 3030590, at *6–7.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   5:25-cv-03478-MWC-DFM                                Date: December 24, 2025

Title:      Arman Kesheshian v. Kristi Noem *et al.*

 

Respondents maintain that because Petitioner has been in their custody for less than six months, he has no basis to challenge the likelihood of his removal under *Zadvydas*. *See Opp.* 2–3. To be sure, *Zadvydas* provided that a six-month detention is where the "presumption" of constitutional reasonableness ends. *See Zadvydas*, 533 U.S. at 701. But "[p]resumptively reasonable does not equate to mandatory." *Gibson v. United States*, No. 2:03-CR-2083-WFN-1, 2017 WL 10775070, at *1 (E.D. Wash. May 23, 2017); *see Rita v. United States*, 551 U.S. 338, 366 (2007) ("As the Court acknowledges . . . *presumptively* reasonable does not mean *always* reasonable; the presumption . . . must be genuinely rebuttable." (Stevens, J., concurring) (emphasis in original) (citing *id.* at 345–48)). And other courts have found release immediately necessary even where petitioners have been detained less than six months. *See, e.g., Esmail*, 2025 WL 3030590, at *3, *5–6 (finding petitioner likely to succeed on merits of wrongful detention claim where immigration detainee was in custody for ten days); *Delkash*, 2025 WL 2683988, at *2 (granting petitioner's release from detention where he was in immigration custody for only two months); *see also Nazarian*, 2025 WL 3236209, at *5 (noting that "because Petitioner challenges his re-detention after already being released on an OSUP, 'ICE's own regulations [ ] place the burden on ICE to show changed circumstances that make removal significantly likely in the reasonably foreseeable future.'" (quoting *Sun v. Noem*, No. 3:25-CV-02433-CAB-MMP, 2025 WL 2800037, at *2 (S.D. Cal. Sep. 30, 2025))). Lastly, Respondents ignore that 8 C.F.R. § 241.13 was added after *Zadvydas*, so the *Zadvydas* Court never allowed for six-month detentions in contravention of federal regulations. *See Hassanzadeh*, 2025 WL 3306272, at *3 (explaining that "Section 241.13 was added in 2001 (in light of *Zadvydas*) and applies where the alien has provided good reason to believe there is no significant likelihood of removal . . . in the reasonably foreseeable future." (cleaned up)).

Respondents assert that, even if the Court accepts that Petitioner's detainment was procedurally inadequate, the proper remedy is not Petitioner's release, but an order "to remedy the specific procedural deficiency that might be established." *See Opp.* 4. Here, Petitioner has raised a serious question going to the merits with respect to three different procedural deficiencies—proper notice as to the reason for revocation of his release, an informal interview where he could contest his detention, and likelihood of his removal in the reasonably foreseeable future. These deficiencies implicate all stages of his re-detention, and providing these protections after Respondents detained already Petitioner would not cure his initial detention lacking the requisite due process. Moreover,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   5:25-cv-03478-MWC-DFM                    Date: December 24, 2025

Title:     Arman Kesheshian v. Kristi Noem *et al.*

Petitioner's release is necessary to return him to the status quo, or "the last uncontested status which proceeded the pending controversy." *Hoac v. Becerra*, No. 2:25-CV-01740-DC-JDP, 2025 WL 1993771, at *7 (E.D. Cal. July 16, 2026) (cleaned up) (quoting *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1210 (9th Cir. 2000)); *Nazarian*, 2025 WL 3236209, at *7 ("While Respondents argue the proper relief is remedying the specific procedural defects rather than releasing Petitioner from custody, . . . the Court rejects this argument. Here, Petitioner's release is necessary to return him to the status quo."); *Esmail*, 2025 WL 3030590, at *6 ("Providing Petitioner an interview ex post facto, while keeping him detained in ICE's custody, would not remedy the apparent constitutional violation that Petitioner has suffered in being re-detained without any measure of due process. The fact that he was not given an interview renders his detention unlawful in the first place, necessitating his release.").

Nor does Respondents' authority save it. In *Ton v. Noem*, the petitioner had not provided any indication that he could not be removed to China. *See Ton v. Noem*, No. 5:25-cv-02033-SB-AGR, 2025 WL 2995068, at *3 (C.D. Cal. Sept. 3, 2025). By contrast, Respondents have twice attempted to remove Petitioner and have been unable to do so, nor do Respondents identify a change in circumstance that will allow them to now remove Petitioner to Armenia.

Respondents also point to *Sanchez v. Bondi*, but this case is inapposite. *See Sanchez v. Bondi*, No. 5:25-cv-02530-AB-DTB, 2025 WL 3190816 (C.D. Cal. Oct. 3, 2025). There, the petitioner argued that an unidentified Supervisory Detention and Deportation Officer who signed his revocation notice was not authorized to revoke supervision. *See id.* at *2. Moreover, that case lacked any analysis as to whether there was a change in circumstances related to respondents' ability to effectuate petitioner's removal. *See generally id.* Lastly, longstanding authority contravenes *Sanchez*'s conclusion that administrative regulations do not limit statutory discretion. *See NLRB v. Welcome-Am. Fertilizer Co.*, 443 F.2d 19, 20 (9th Cir. 1971) ("When administrative bodies promulgate rules or regulations to serve as guidelines, these guidelines should be followed. Failure to follow such guidelines tends to . . . deny adequate notice contrary to fundamental concepts of fair play and due process." (citation omitted)); *EGAE v. Fudge*, No. 3:23-cv-00003-JMK, 2023 WL 5957144, at *6 (D. Alaska Sept. 13, 2023) (same); *VanLeeuwen v. Farm Credit Admin.*, 577 F. Supp. 264, 277–78 (D. Or. 1983) ("Even if an agency has absolute statutory discretion over particular actions, the agency's regulations limit that discretion

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  5:25-cv-03478-MWC-DFM                    Date: December 24, 2025

Title:    Arman Kesheshian v. Kristi Noem *et al.*

and provide a source of legal standards for judicial review." (citing *Glacier Park Found. v. Watt*, 663 F.2d 882, 885–86 (9th Cir. 1981))).

Accordingly, the Court finds that Petitioner has raised serious questions going to the merits on his request for release from detention and restoration of OSUP status. *See Hassanzadeh v. Warden, Desert View Facility*, No. ED CV 25-2113-DMG (MAAx), 2025 WL 3306272, at *5 (C.D. Cal. Nov. 25, 2025); *Luu v. Bowen*, No. 5:25-CV-03145-MEMF-SP, 2025 WL 3552298, at *9 (C.D. Cal. Dec. 11, 2025).

>       ii.    *Irreparable Harm*

"It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)).  The Court finds that Petitioner would be immediately and irreparably harmed by his continued deprivation of liberty without requisite due process under 8 C.F.R. § 241.13 and 8 C.F.R. § 241.4. *See Hashemi v. Noem*, No. 2:25-cv-10335-HDV-SR, 2025 WL 3468694, at *7 (C.D. Cal. Nov. 19, 2025); *Delkash*, 2025 WL 2683988, at *6; *see also Hernandez v. Sessions*, 872 F.3d 976, 994–95 (9th Cir. 2017) (finding irreparable harm was likely to result from government's policy of not considering financial ability to pay immigration bonds); *Rodriguez v. Robbins*, 715 F.3d 1127, 1144–45 (9th Cir. 2013) (finding irreparable harm was likely to result from government's reading of immigration detention statutes as not requiring a bond hearing for noncitizens subject to prolonged detention).  "Moreover, the Ninth Circuit has recognized 'the irreparable harms imposed on anyone subject to immigration detention,' including 'subpar medical and psychiatric care in ICE detention facilities.'" *Delkash*, 2025 WL 2683988, at *6 (quoting *Hernandez*, 872 F.3d at 999).

Accordingly, this factor weighs in favor of granting the TRO ordering Petitioner's release from detention and restoration of his OSUP status.

>       iii.    *Balance of Equities and Public Interest*

As detailed above, the last two Winter factors "merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009).  As to Respondents' interests, there is a compelling interest in the enforcement of the nation's immigration laws. *See Medina v. U.S. Dep't of Homeland Sec.*, 313 F. Supp. 3d 1237, 1252 (W.D. Wash. 2018).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   5:25-cv-03478-MWC-DFM                         Date: December 24, 2025

Title:     Arman Kesheshian v. Kristi Noem *et al.*

Still, the balance of equities and the public interest factors tip in favor of Petitioner because he is challenging Respondents' violation of federal law.  *See Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1029 (9th Cir. 2013) ("[I]t is clear that it would not be equitable or in the public's interest to allow the [government] . . . to violate the requirements of federal law." (citations omitted)); *Esmail*, 2025 WL 3030590, at \*9; *Luu*, 2025 WL 3552298, at \*10 ("'Public interest concerns are implicated when a constitutional right has been violated, because all citizens have a stake in upholding the Constitution.'" (quoting *Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005))); *see also Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013) (noting that the government "cannot suffer harm from an injunction that merely ends an unlawful practice").

Accordingly, and considering the other factors that the Court has already examined, Petitioner is entitled to immediate release from detention and restoration of his OSUP status.

C.    Request for Order Enjoining Re-Detention

The Application includes a request for the Court "to enjoin Respondents from re-detaining [Petitioner] absent order of this Court or absent the provision of an informal interview where Petitioner can contest the reason for the revocation of his OSUP and demonstrate that his removal is not reasonably foreseeable." *App.* 6.  Stated differently, Petitioner asks the Court to order Respondents to follow the governing law before re-detaining Petitioner.  Based on the Court's reasoning above, Petitioner has likewise satisfied the *Winter* factors with respect to this request.  Accordingly, Petitioner is entitled to an order enjoining Respondents from re-detaining Petitioner without complying with the law governing such re-detention, including the requirement that Respondents provide an informal interview where Petitioner can contest the revocation of his OSUP status and demonstrate that his removal is not reasonably foreseeable.  *See Rodriguez*, 2025 WL 3466925, at \*3; *Delkash*, 2025 WL 2683988, at \*6.

D.    Request to Enjoin Removal to Third Country

Petitioner's last request is for the Court to bar Respondents from removing Petitioner to a third country "without notice and an opportunity to be heard on any fear of persecution or torture he has in that third country." *App.* 6.  As an initial matter, if Respondents removed Petitioner from the country—or even from this District—during the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  5:25-cv-03478-MWC-DFM                    Date: December 24, 2025

Title:    Arman Kesheshian v. Kristi Noem *et al.*

pendency of these proceedings, that would frustrate the Court's ability to provide the relief it now grants.  It is within the Court's power to grant incidental relief necessary to effectuate its order.  *See Dominguez v. Dep't of Mental Health*, No. CIV S-06-0301 GEB CKD P, 2012 WL 1576001, at *3 (E.D. Cal. May 3, 2012) ("A federal court may order measures ancillary to the appropriate prospective relief." (citing *Edelman v. Jordan*, 415 U.S. 651, 668 (1974))).

Beyond the pendency of these proceedings, Petitioner remains entitled to notice and the opportunity to be heard regarding fear of torture in that country.  Petitioner avers that his need for this order stems from Secretary Noem's recent memorandum "purporting to authorize third country removals based on generalized diplomatic assurances without further procedures."  *See App.* 12.

The Convention Against Torture applies in full force to these proceedings. Congress has provided that "it shall be the policy of the United States not to expel, extradite, or otherwise effect the involuntary return of any person to a country in which there are substantial grounds for believing that the person would be in danger of being subjected to torture."  *See Barajas-Romero v. Lynch*, 846 F.3d 351, 360 (9th Cir. 2017) (citing Foreign Affairs Reform and Restructuring Act of 1998, Pub.L. No. 105–277, Div. G, Title XXII, § 2242, 112 Stat. 2681–822 (1998) (codified as a note to 8 U.S.C. § 1231 (1999))).  The District Court's authority to enjoin the government from taking actions not authorized by any regulation or statute—or in contravention thereof—is well-recognized. *See Al Otro Lado, Inc. v. McAleenan*, 423 F. Supp. 3d 848, 866 (S.D. Cal. 2019).

Other courts have identified that individuals like Petitioner have "a due process right to receive a meaningful notice and opportunity to present a fear-based claim to an immigration judge before DHS deports him to a third country."  *Gomez v. Mattos*, No. 2:25-cv-00975-GMN-BNW, 2025 WL 3101994, at *6 (D. Nev. Nov. 6, 2025); *see M.T.M. v. Andrews*, No. 2:25-cv-08208-SRM-PD, 2025 WL 2995053, at *2 (C.D. Cal. Sept. 24, 2025); *Vaskanyan v. Janecka*, No. 5:25-cv-01475-MRA-AS, 2025 WL 2014208, at *9 (C.D. Cal. June 25, 2025).

Like Petitioner's request for an order barring re-detention absent compliance with governing law, the Court construes this request as one that Respondents comply with applicable federal law prior to removing Petitioner to a third country.  Accordingly, the Court enjoins Respondents from removing Petitioner from this District for the pendency of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   5:25-cv-03478-MWC-DFM                    Date: December 24, 2025

Title:     Arman Kesheshian v. Kristi Noem *et al.*

these proceedings or thereafter removing him to a third country without notice and an opportunity to be heard on any fear of persecution or torture he has in that third country.

IV.    Bond Requirement

Rule 65 notes that "[t]he court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."  Fed. R. Civ. P. 65(c).  "Despite the seemingly mandatory language, 'Rule 65(c) invests the district court with discretion as to the amount of security required, *if any*.'"  *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009) (quoting *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003) (emphasis in original)).  "In particular, the district court may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct."  *Id.* (cleaned up).  "That is, the mandatory language of Rule 65(c) does not 'absolve[] the party affected by the injunction from its obligation of presenting evidence that a bond is needed, so that the district court is afforded an opportunity to exercise its discretion in setting the amount of the bond.'"  *Vaskanyan*, 2025 WL 2014208, at *8 (quoting *Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*, 321 F.3d 878, 883 (9th Cir. 2003)).

Since the Court is ordering that Respondents follow the governing law, bond is unnecessary.  *See Swan v. Tanjuakio*, No. 21-00052 JMS-KJM, 2021 WL 1794756, at *8 (D. Haw. May 5, 2021) ("The court is simply requiring [defendant] to follow the law.  No bond is required." (footnote omitted)); *Hassanzadeh*, 2025 WL 3306272, at *6 (ruling that bond was unnecessary where the court ordered respondents to release immigration detainee from custody and follow the governing law).

V.    Conclusion

For the foregoing reasons, the Court **GRANTS** the Application and **ORDERS** as follows:

1. Respondents must release Petitioner immediately under an Order of Supervision.
2. Respondents may not re-detain Petitioner absent compliance with 8 C.F.R. § 241.4(l)(1), 8 C.F.R. § 241.13(i), and all other governing law.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   5:25-cv-03478-MWC-DFM                    Date: December 24, 2025

Title:     Arman Kesheshian v. Kristi Noem *et al.*

3. Respondents may not transfer Petitioner out of this District during the pendency of these proceedings.
4. Respondents may not remove Petitioner to a third country without notice and an opportunity to be heard on any fear of persecution or torture he has in that third country.

The Court **ORDERS** Respondents to show cause, in writing, no later than 7 days after this Order as to why a preliminary injunction should not issue.  Petitioner may file a response no later than 7 days after Respondents' filing.

   **IT IS SO ORDERED.**

                                                         :
                               **Initials of Preparer**   TJ